UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JUWAUN LONG,

                    Plaintiff,                    Case No. 2:21-cv-150

v.                                                Honorable Paul L. Maloney

A. MUNRO et al.,

                    Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against

Defendants C. Laponsie, Burke, Magahey, Huddlestone, Derry, and McLean.  The Court will also

dismiss, for failure to state a claim, the following claims against the remaining Defendants:

retaliation, due process, and conspiracy claims against Defendant J. Laponsie, and equal

protection, due process, and conspiracy claims against Defendant Munro.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility.  Plaintiff sues Defendants Prison Guards A. Munro, J. Laponsie, C. Laponsie, Unknown Burke, Unknown Magahey, Unknown Huddlestone, Resident Unit Manager Art Derry, and Grievance Coordinator M. McLean.

Plaintiff alleges that on July 17, 2020, he filed a grievance on Defendant Munro and Defendant Munro responded by writing a false retaliatory misconduct on Plaintiff.  In the misconduct ticket, Defendant Munro accused Plaintiff of being in the dayroom without authorization.  On July 18, 2020, Defendant Munro wrote another misconduct on Plaintiff for interference with the administration of rules.  Defendant Munro told Plaintiff that his grievance would be denied and the misconduct would be upheld.  On July 22, 2020, Hearings Officer Lacrosse found Plaintiff not guilty of the second misconduct but did not address Plaintiff's assertion of retaliatory motive on the part of Defendant Munro.

Plaintiff filed four kites requesting a step II appeal form, but Defendant McLean refused to send Plaintiff the form.  Plaintiff states that if he had been found guilty of the class II misconduct, he would have faced up to 5 days on top-lock, up to 30 days' loss of privileges, up to 40 hours of extra duty, and restitution.

On September 13, 2020, Defendant Munro wrote another false misconduct report on Plaintiff for refusing to wear a mask, which is a health and safety hazard.  On September 29, 2020, Defendant Munro wrote another false misconduct ticket on Plaintiff for failing to properly wear his mask.  On October 16, 2020, Defendant C. Laponsie held hearings on the misconducts, despite the prohibition against staff conducting such a hearing if they worked on the same shift as

the officer who wrote the misconduct.  Plaintiff further claims that Defendants Munro and C. Laponsie made a wager that the loser would buy beer for the one who wrote the most misconduct tickets, and that an excessive number of tickets were written on non-white prisoners.

Plaintiff filed appeals on two class III misconduct convictions, and on October 21, 2020, Defendant Derry denied his appeals, despite the fact that MDOC policy only allows the Deputy Warden or Assistant Deputy Warden to decide class III misconduct appeals.  Plaintiff states that this decision is in direct conflict with Resident Unit Manager Batho's April 14, 2021, decision granting Plaintiff's request for a rehearing because, under MDOC policy, the hearing officer should not be from the same shift as the staff member who authored the misconduct.

On October 15, 2020, Defendant Munro wrote another false misconduct ticket on Plaintiff for excessive noise in retaliation for grievances URF-2007-2036-17A and URF-2007-1982-28A.  During the hearing, Defendant Magahey refused to record retaliation as a defense in the hearing report, stating that he never puts that kind of stuff in a prisoner's hearing report and that Plaintiff should not have written the grievances.  Plaintiff states that the refusal to record retaliation as a defense was an attempt to prevent Plaintiff from exhausting the issue.

On October 17, 2020, Defendant J. Laponsie refused Plaintiff's request to use the bathroom, but moments later allowed a white prisoner to use the restroom.  Plaintiff states that the refusal to allow him to use the bathroom also violated Policy Directive 03.02.130(L), which allows prisoners to use the bathroom if count takes more than thirty minutes.  On October 23, 2020, Defendant Munro wrote a false retaliatory out-of-place misconduct on Plaintiff after he told Defendant Munro that he was going to write a grievance.

On November 4, 2020, Defendant Burke refused to investigate Plaintiff's retaliation claims against Defendant Munro, or to place them in the hearing report, despite

3

acknowledging that Plaintiff was correct that sanctions should not have started until 6:00 a.m. the following day, so that Plaintiff could not have been out of place.  Plaintiff states that Defendant Burke subsequently imposed the maximum sanction of 5 days on top-lock without notice. Defendant Burke did not provide Plaintiff with a copy of the hearing report.

On November 6, 2020, while cooking in the dayroom, Defendant Magahey stated that Plaintiff was on top-lock and ordered him to produce his I.D. card.  Plaintiff told Defendant Magahey that Defendant Burke had postponed his hearing and that he was not on sanctions. Plaintiff then discovered that Defendant Burke had imposed sanctions on him without giving him notice.  Plaintiff believes that this was done so that he would unwittingly break his sanction and be placed in segregation.

Defendant Munro subsequently took a 90-day leave, but when he returned, he and Defendants C. Laponsie and J. Laponsie continued to subject Plaintiff to retaliation and discrimination.  On March 26, 2021, Defendant C. Laponsie wrote a false misconduct on Plaintiff for violating health and safety rules.  Plaintiff requested a hearing.  On April 3, 2021, Defendant Munro conducted a hearing despite the fact that it violated the rule against hearing misconducts written by staff on the same shift.  Plaintiff told Defendant Munro that the hearing violated his due process rights and Defendant Munro responded by saying, "Yes I can hear and conduct hearings on you, you like to write grievances, we write tickets on you."  (ECF No. 1, PageID.10.)  Plaintiff asked Defendant Munro to review video footage because it would show that the misconduct charge was false and told him that he was going to file a grievance.  Plaintiff filed a misconduct appeal, which was granted by Assistant Deputy Warden.  However, Plaintiff had already served two days on top-lock.

Defendant Munro wrote three false class III misconduct tickets on April 3, 2021, and on April 10, 2021.  On April 10, 2021, Defendant Munro attempted to conduct a hearing on the misconducts that he had written on Plaintiff.  On April 16, 2021, Defendants Magahey and Huddlestone called Plaintiff to the A-Unit Lobby Officer's desk and told Plaintiff that he would not be getting a hearing on his misconduct tickets and would be getting his sanctions in the mail.  On April 18, 2021, Plaintiff filed an appeal of the class III misconducts, which was granted by Assistant Deputy Warden Batho, rendering the misconduct tickets void.  However, Plaintiff had already served a total of 13 days on top-lock.

Plaintiff claims that Defendants violated his rights under the First and Fourteenth Amendments.  Plaintiff seeks damages and injunctive relief.

## II.      Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.   Due Process

Plaintiff claims that the handling of his class II and III misconduct tickets violated his procedural due process rights. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted), *partially overruled on other grounds by Sandin v. Conner,* 515 U.S. 472 (1995).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Under Michigan Department of Corrections Policy Directive 03.03.105 ¶ B (eff. July 1, 2018), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.   The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct.  *See* Policy Directive 03.03.105, ¶ AAAA.  The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process.  *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from the handling of his Class II and III misconduct tickets.

Nor does Plaintiff have a due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendant McLean's refusal to provide Plaintiff with a grievance form did not deprive him of due process.

Finally, to the extent Plaintiff invokes prison policy, he fails to allege a constitutional claim.  Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007).  To demonstrate a violation of procedural due process, a plaintiff must prove the following elements:  (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal

procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that multiple Defendants violated prison policy therefore fail to raise a cognizable federal due process claim.

## IV. Equal Protection

Plaintiff claims that Defendants Munro, C. Laponsie, and J. Laponsie discriminated against him on the basis of his race in violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In typical equal protection cases, plaintiffs "generally allege that they have been arbitrarily classified as members of an 'identifiable group.'" *Engquist*, 553 U.S. at 601 (quoting *Pers. Admr of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). When the identifiable group has been recognized as a suspect or quasi-suspect class, courts examine the classification under a heightened level of scrutiny. *See, e.g., Regents of Univ. of California v. Bakke*, 438 U.S. 265, 290-91 (1978) (opinion of Powell, J.) (treating race as a suspect classification); *Craig v. Boren*, 429 U.S. 190, 197 (1976) (treating gender as a quasi-suspect classification). Plaintiff states that he is a member of a suspect class on the basis of his race.

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical*

9

*Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'") (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff claims that on October 16, 2020, Defendants Munro and C. Laponsie made a wager that the loser would buy beer for the one who wrote the most misconduct tickets, and that an excessive number of tickets were written on non-white prisoners. Plaintiff's allegations on this point are wholly conclusory. Plaintiff fails to allege facts showing that the prisoners who received misconduct tickets on that date were engaged in the same conduct or that they were charged with the same misconduct. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Because Plaintiff fails to show that non-white prisoners who received tickets were similarly situated in all other respects to white prisoners who did not receive tickets, his equal protection claims against Defendants Munro and C. Laponsie are properly dismissed.

With regard to Defendant J. Laponsie, Plaintiff alleges that on October 17, 2020, Defendant J. Laponsie refused Plaintiff's request to use the bathroom, but moments later allowed a white prisoner to use the restroom. Because Plaintiff has alleged facts that show he was treated

10

differently than a white prisoner in a similar situation, his equal protection claim against Defendant J. Laponsie may not be dismissed on initial review.

## V.      Retaliation

Plaintiff claims that Defendants retaliated against him for his use of the grievance system.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance).  "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form."  *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir.

11

2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff states that as a result of minor misconduct convictions, he was subjected to loss of privileges and top-lock.  Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action.  *Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")).  The *Maben* court noted the contrary holding in *Ingram v. Jewell*, 94 F. App'x. 271, 273 (6th Cir. 2004) (citing *Thaddeus-X*, 175 F.3d at 396–97) (14 days' loss of privileges does not constitute an adverse action), and, because *Maben* was a published opinion, it effectively overruled *Ingram*.

Finally, Plaintiff must show that his protected conduct was the motivation for the adverse action.  Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.

2004)).  However, "[c]onclusory allegations of temporal proximity are not sufficient to show a

retaliatory motive."  *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).  Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is
> sufficient to create an issue of fact as to retaliatory motive.  In *Muhammad* the Sixth
> Circuit did not resolve the issue, but merely observed that "temporal proximity
> alone **may be** 'significant enough to constitute indirect evidence of a causal
> connection so as to create an inference of retaliatory motive.'"  *Id.* at 418 (quoting
> *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added).  Even if
> temporal proximity may in some cases create an issue of fact as to retaliatory
> motive, it would only be sufficient if the evidence was "significant enough."
> Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create
> an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

With regard to Defendants J. Laponsie, C. Laponsie, Huddlestone, Derry, and

McLean, Plaintiff fails to allege any facts showing that their conduct was motivated by a desire to

retaliate against him.  Conclusory allegations of unconstitutional conduct without specific factual

allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S.

at 555.  Because Plaintiff's retaliation claims against these Defendants are entirely conclusory,

they are properly dismissed.

Plaintiff alleges that Defendants Magahey and Burke refused to record Plaintiff's

defense of retaliation when conducting hearings on misconduct tickets written by Defendant

Munro in an effort to prevent Plaintiff from exhausting the issue.  The Court notes that the

exhaustion requirement only mandates exhaustion of *available* administrative remedies.  *See* 42

U.S.C. § 1997e(a).  Thus, if Plaintiff was improperly denied the ability to exhaust the defense of

retaliation, such exhaustion would not be a prerequisite for initiation of a civil rights action.  *See*

*Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (reiterating that, if the prisoner is barred from

pursuing a remedy by policy or by the interference of officials, the grievance process is not

available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir.

2001).  Consequently, the conduct of Defendants Magahey and Burke did not constitute an adverse action, and Plaintiff's retaliation claims are properly dismissed.

Finally, Plaintiff alleges that Defendant Munro wrote numerous retaliatory misconduct tickets on him and improperly conducted a hearing on some of the tickets he himself had written on Plaintiff.  Plaintiff also alleges that Defendant Munro frequently wrote misconduct tickets immediately after Plaintiff filed grievances, and that he made specific statements such as "you like to write grievances, we write tickets on you" (ECF No. 1, PageID.10), indicating that the tickets were written in retaliation for Plaintiff's use of the grievance procedure.  Consequently, the Court concludes that Plaintiff has stated a retaliation claim against Defendant Munro.

## VI.    Conspiracy

Plaintiff alleges that all of the named Defendants conspired to violate his constitutional rights.  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

14

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants C. Laponsie, Burke, Magahey, Huddlestone, Derry, and McLean will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: retaliation, due process, and conspiracy claims against Defendant J. Laponsie, and equal protection, due process, and conspiracy claims against Defendant Munro. Plaintiff's equal protection claim against Defendant J. Laponsie and his retaliation claim against Defendant Munro remain in the case.

An order consistent with this opinion will be entered.


Dated:   October 7, 2021                         /s/ Paul L. Maloney
                                                 Paul L. Maloney
                                                 United States District Judge