UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JUWAUN LONG, #349322,                          Case No. 2:21-cv-150

                    Plaintiff,                 Hon. Paul L. Maloney
                                               U.S. District Judge
        v.

A. MUNRO and J. LAPONSIE,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses the motions for summary
judgment filed by Plaintiff (ECF No. 27) and Defendants (ECF No. 41).

Plaintiff — state prisoner Juwaun Long — filed suit pursuant to 42 U.S.C. §
1983 on June 22, 2021.  (ECF No. 1.)  In his verified complaint, Long asserted that
while he was confined at the Chippewa Correctional Facility (URF) in Kincheloe,
Michigan, eight Michigan Department of Corrections (MDOC) employees[1] at URF
engaged in a civil conspiracy, retaliated against Long in violation of his First
Amendment rights, discriminated against Long in violation of his Fourteenth
Amendment rights, and violated Long's due process rights.  (ECF No. 1, PageID.4.)

_____

[1]     The MDOC Defendants are: (1) Corrections Officer (CO) A. Munro, (2) CO J.
LaPonsie, (3) CO C. Laponsie, (4) CO Burke, (5) CO Magahey, (6) CO Huddleston, (7)
Resident Unit Manager (RUM) Art Derry, and (8) Grievance Coordinator (GC) M.
McLean.  (ECF No. 1, PageID.2-3.)

On October 17, 2021, this Court issued an opinion and order dismissing all but Long's retaliation claim against CO Munro for issuing misconduct tickets in response to Long filing grievances, and an equal protection claim against CO J. LaPonsie for refusing Long's request to use the restroom but immediately thereafter granting a white prisoner's request to use the restroom.  (ECF No. 6, PageID.89 (Opinion); ECF No. 7, PageID.91 (Order).)

Plaintiff Long now moves for summary judgment, asserting that there are no genuine issues of material fact and that he has established each element of his claims. (ECF No. 27, PageID.150.)  COs Munro and J. LaPonsie also move for summary judgment. (ECF No. 41.)  With respect to Long's retaliation claim, Defendants assert that there are no genuine issues of material fact because the evidence in the record shows (1) that Long abused the grievance process and was therefore not engaged in protected conduct, and (2) that Munro did not issue false, retaliatory misconduct tickets. (ECF No. 42, PageID.311-336.)  With respect to Long's equal protection claim, Defendants assert that Long has not established a genuine issue of material fact as to whether LaPonsie harbored discriminatory intent when he denied Long's request to use the restroom; he did not.  (*Id.*, PageID.336-337.)  Finally, Defendants assert that they are entitled to qualified immunity in their individual capacities and sovereign immunity in their official capacities.  (*Id.*, PageID.337-338.)

The undersigned respectfully recommends that the Court grant Defendants' summary judgment on Long's official-capacity claims for monetary relief because Defendants are entitled to sovereign immunity as to those claims.  But the

undersigned recommends that the Court deny Long's motion for summary judgment (ECF No. 27) and Defendants' motion for summary judgment (ECF No. 41) as to Long's remaining claims because there are genuine issues of material fact bearing on Long's retaliation claim and equal protection claims.

## II.    Factual Allegations

The majority of Long's factual allegations were set forth in this Court's October 7, 2022 screening opinion.  There, the Court provided in pertinent part:

> Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. . . .
>
> Plaintiff alleges that on July 17, 2020, he filed a grievance on Defendant Munro and Defendant Munro responded by writing a false retaliatory misconduct on Plaintiff. In the misconduct ticket, Defendant Munro accused Plaintiff of being in the dayroom without authorization. On July 18, 2020, Defendant Munro wrote another misconduct on Plaintiff for interference with the administration of rules. Defendant Munro told Plaintiff that his grievance would be denied and the misconduct would be upheld. On July 22, 2020, Hearings Officer Lacrosse found Plaintiff not guilty of the second misconduct but did not address Plaintiff's assertion of retaliatory motive on the part of Defendant Munro. . . . Plaintiff states that if he had been found guilty of the class II misconduct, he would have faced up to 5 days on top-lock, up to 30 days' loss of privileges, up to 40 hours of extra duty, and restitution.
>
> On September 13, 2020, Defendant Munro wrote another false misconduct report on Plaintiff for refusing to wear a mask, which is a health and safety hazard. On September 29, 2020, Defendant Munro wrote another false misconduct ticket on Plaintiff for failing to properly wear his mask. . . .
>
> On October 15, 2020, Defendant Munro wrote another false misconduct ticket on Plaintiff for excessive noise in retaliation for grievances URF-2007-2036-17A and URF-2007-1982-28A. During the hearing, Defendant Magahey refused to record retaliation as a defense in the hearing report, stating that he never puts that kind of stuff in a

prisoner's hearing report and that Plaintiff should not have written the grievances. . . .

On October 17, 2020, Defendant J. Laponsie refused Plaintiff's request to use the bathroom, but moments later allowed a white prisoner to use the restroom. Plaintiff states that the refusal to allow him to use the bathroom also violated Policy Directive 03.02.130(L), which allows prisoners to use the bathroom if count takes more than thirty minutes. On October 23, 2020, Defendant Munro wrote a false retaliatory out-of-place misconduct on Plaintiff after he told Defendant Munro that he was going to write a grievance.

On November 4, 2020, Defendant Burke refused to investigate Plaintiff's retaliation claims against Defendant Munro, or to place them in the hearing report, despite acknowledging that Plaintiff was correct that sanctions should not have started until 6:00 a.m. the following day, so that Plaintiff could not have been out of place. Plaintiff states that Defendant Burke subsequently imposed the maximum sanction of 5 days on top lock without notice. Defendant Burke did not provide Plaintiff with a copy of the hearing report. . . .

Defendant Munro subsequently took a 90-day leave . . . . On March 26, 2021, Defendant C. Laponsie wrote a false misconduct on Plaintiff for violating health and safety rules. Plaintiff requested a hearing. On April 3, 2021, Defendant Munro conducted a hearing despite the fact that it violated the rule against hearing misconducts written by staff on the same shift. Plaintiff told Defendant Munro that the hearing violated his due process rights and Defendant Munro responded by saying, "Yes I can hear and conduct hearings on you, you like to write grievances, we write tickets on you." (ECF No. 1, PageID.10.) Plaintiff asked Defendant Munro to review video footage because it would show that the misconduct charge was false and told him that he was going to file a grievance. Plaintiff filed a misconduct appeal, which was granted by Assistant Deputy Warden. However, Plaintiff had already served two days on top-lock.

Defendant Munro wrote three false class III misconduct tickets on April 3, 2021, and on April 10, 2021. On April 10, 2021, Defendant Munro attempted to conduct a hearing on the misconducts that he had written on Plaintiff. On April 16, 2021, Defendants Magahey and Huddlestone called Plaintiff to the A-Unit Lobby Officer's desk and told Plaintiff that he would not be getting a hearing on his misconduct tickets and would be getting his sanctions in the mail. On April 18, 2021, Plaintiff filed an appeal of the class III misconducts, which was granted by Assistant

Deputy Warden Batho, rendering the misconduct tickets void. However, Plaintiff had already served a total of 13 days on top-lock.

Plaintiff claims that Defendants violated his rights under the First and Fourteenth Amendments. Plaintiff seeks damages and injunctive relief.

(ECF No. 6, PageID.76-79.)

In addition to the above allegations, Long's verified complaint states that during the October 23, 2020 interaction between Long and Munro, Munro stated: "[K]eep filing your grievances, as long as you're in our unit, you'll be in TOP-LOCK." (ECF No. 1, PageID.9.)

Long sues Defendants in their personal and official capacities.  (*Id.*, PageID.2.)

## III.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.    Retaliation

The undersigned first turns to Long's retaliation claim against CO Munro for allegedly issuing a slew of misconduct tickets after Long began making oral grievances and filing written grievances against Munro.   In their motions for summary judgment, the parties present the Court with two different stories.  Long tells the story of a prisoner who made an oral complaint against a prison official and was subsequently retaliated against a total of eight times.  (ECF No. 1, PageID.6-11.) Defendants tell the story of a prisoner who made an oral grievance or filed a written grievance immediately following the issuance of any misconduct ticket, in an attempt to insulate himself from disciplinary action, or else to manufacture retaliation claims to advance in Court.  (ECF No. 42, PageID.315.)

For the reasons set forth below, the undersigned finds that neither version of events is so supported by the record as to warrant summary judgment.   In other words, the undersigned finds that there are genuine issues of material fact bearing on whether Long properly utilized the grievance process such that his grievances constituted protected conduct, and whether Defendant Munro was motivated by Long's protected conduct to issue the misconduct tickets.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was

taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct.  *Id.*

Long's alleged protected conduct, Munro's alleged adverse actions, and Long's purported evidence of retaliatory motive are set forth in the tables below.

| Date of Protected Conduct | Alleged Protected Conduct |
| --- | --- |
| July 17, 2020 | Long told Munro that he would be filing a grievance against Munro for discriminatory harassment.  (ECF No. 1, PageID.6.) |
| July 18, 2020 | Long told Munro that he would be filing a grievance against Munro for discriminating against, retaliating against, and harassing Long.  (*Id.*) |
| July 21, 2020 | Long filed grievance URF-20-07-1982-28A asserting that Munro and another officer were discriminating against him.  (ECF No. 42-5, PageID.368.) |
| July 22, 2020 | Long filed grievance URF-20-07-2036-17A, asserting that Munro's July 18, 2020 grievance was retaliatory.  (ECF No. 1-1, PageID.23; ECF No. 42-5, PageID.366.) |
| October 23, 2020 | Long told Munro that he would be filing another grievance against Munro for retaliating against Long and violating MDOC policy.  (ECF No. 1, PageID.9.) |
| April 3, 2021 | Long told Munro that he would be filing a grievance against Munro for retaliating against, conspiring against, and discriminating against Long and violating Long's due process rights.  (*Id.*, PageID.10.) |

| Date of Adverse Action | Alleged Adverse Action |
| --- | --- |
| July 17, 2020 | Munro issued Long a false misconduct for violating a posted rule.  (ECF No. 1, PageID.6.) |
| July 18, 2020 | Munro issued Long a false misconduct ticket for interference within administrative rules.  (*Id.*) |
| September 13, 2020 | Munro issued a false misconduct ticket based on a health, safety, or fire hazard.  (*Id.*, PageID.7.) |
| September 29, 2020 | Munro issued a false misconduct ticket based on a health, safety, or fire hazard.  (*Id.*, PageID.8.) |
| October 15, 2020 | Munro issued Long a false misconduct ticket for excessive noise.  (*Id.*) |

| Date of Adverse Action | Alleged Adverse Action |
|---|---|
| October 23, 2020 | Munro issued Long a false misconduct ticket for being out of place. (*Id.*, PageID.9.) |
| April 3, 2021 | Munro conducted a biased misconduct hearing for a misconduct issued by another officer during his shift, contrary to facility policy. (*Id.*, PageID.10-11.) |
| April 3, 2021 | Munro issued Long two false misconduct tickets.  (*Id.*, PageID.11.) |
| April 20, 2021 | Munro issued Long a misconduct ticket.  (*Id.*) |

| Date of Expressed Retaliatory Motive | Munro's Alleged Expression of Retaliatory Motive |
|---|---|
| July 18, 2020 | Munro stated: "Your grievance will get denied, my ticket will stand." (ECF No. 1, PageID.6.) |
| October 23, 2020 | Munro stated: "[K]eep filing your grievances, as long as you're in our unit, you'll be in TOP-LOCK."  (*Id.*, PageID.9.) |
| April 3, 2021 | Munro stated: "Yes I can hear and conduct hearings on you, you like to write grievances, we write tickets on you."  (*Id.*, PageID.10.) |

Long contends that his protected conduct preceded Munro's adverse actions, and that he has established that Munro's adverse actions were motivated by his protected conduct.  (ECF No. 27, PageID.143-145.)  Munro asserts: (1) that Long's grievances did not constitute protected conduct because they were abusive, (2) that the complained-of misconduct tickets did not constitute adverse action because they were not false, (3) that Long has failed to establish the Munro harbored retaliatory motive, and (4) that Munro has shown that he would have issued the misconduct tickets regardless of Long's protected conduct.  (ECF No. 42, PageID.311-336.)

## A. Protected Conduct

As set forth above, Long contends that he was engaged in protected conduct when he made oral grievances on July 17, 2020, July 18, 2020, October 23, 2020, and April 3, 2021, and filed written grievances on July 21, 2020 and July 22, 2020. The Sixth Circuit has explained that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). So too does a threat to file a grievance, otherwise known as an oral grievance. *Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009); *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018).

But Munro asserts that Long filed his grievances to escape liability for his misconduct charges, or else to fabricate retaliation claims. (ECF No. 42, PageID.315.) Prisoners "cannot exercise [their right to file grievances] in a manner that violates legitimate prison regulations or penological objectives." *Smith*, 250 F.3d at 1037. "'Abusive or manipulative use of a grievance system [is] not ... protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

Defendants offer the Court little more than conclusory allegations in support of their contention that Long's grievances were abusive or manipulative. Defendants rely heavily on the timeline of the grievances, pointing out that during an August 18,

9

2022 deposition, Long clarified that the first oral grievance at issue, made on July 17, 2020, was made in response to the first misconduct ticket, issued on the same day. (ECF No. 42, PageID.313 (citing ECF No. 42-3, PageID.353-354 (Long's Deposition Testimony)).)  While this timeline precludes Long from asserting that the July 17, 2020 misconduct ticket was retaliatory,[2] as it preceded any alleged protected conduct, it does not preclude Long from asserting that the remaining seven instances of adverse action were retaliatory.  And while Munro emphasizes that every grievance followed the issuance of a misconduct ticket, that fact alone does little to establish an abuse of the grievance process.  (*Id.*, PageID.314-317.)  Per Long's complaint, he believed that the relevant misconducts were false, and that Munro issued misconducts to harass, discriminate, or retaliate against him.  (ECF No. 1, PageID.6-11.)  As the MDOC's grievance process was designed to provide prisoners "with an effective method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement," it seems that filing grievances would be the appropriate response for a prisoner in Long's position.  Michigan Department of Corrections, *Policy Directive 03.02.130: Prisoner/Parolee Grievances* 1 (2019).  And Munro provides no authority suggesting otherwise.  Accordingly, in the opinion of the

---

[2]     While Long's complaint sets forth various instances of protected conduct and adverse action, it does not clearly separate the instances into distinct retaliation claims.  As such it is not clear whether Long intended to assert that the July 17, 2020 misconduct ticket was retaliatory, or simply to provide context for his July 17, 2020 protected conduct.  But what is clear is Long's position that he engaged in protected conduct on July 17, 2020, and that Munro thereafter engaged in a pattern of issuing retaliatory misconducts.

undersigned, there are genuine issues of fact bearing on whether Long was engaged in protected conduct.

## B.  Adverse Action

Defendants next assert that "Long cannot prove that [the misconduct] tickets were false, and therefore Long cannot prove that Munro took adverse action against Long for filing grievances."  (ECF No. 42, PageID.318.)

To establish the second element of a retaliation claim, a prisoner-plaintiff must show an adverse action by a prison official that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "capable of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  Receipt of a misconduct ticket is adverse action sufficient to support a retaliation claim.  *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[ ] an adverse action").

Here, Defendants do not dispute that CO Munro issued Long several misconduct tickets.  Instead, they assert that the misconduct tickets were not false, and therefore did not constitute adverse action.  Defendants rely on the Sixth Circuit's recent, unpublished decision in *Bey v. Hissong*, No. 21-2883, 2022 WL 3969831 (6th Cir. Apr. 19, 2022), to support their position.  There, the court found that an insolence misconduct ticket did not constitute adverse action where the

11

plaintiff failed to establish a genuine issue of fact as to the falsity of the charge. *Id.* at *3-4.

As an initial matter, the undersigned notes that in the past, the Sixth Circuit has addressed the falsity of a misconduct ticket as an issue of causation, not adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) ("The alleged falsity of the ticket, however, addresses causation. . . ."). Furthermore, the court has explained that when a plaintiff cannot establish that the relevant misconduct ticket is false, he can establish retaliatory motive by demonstrating that other inmates regularly engaged in the conduct for which he was charged without being subject to disciplinary action, or that he regularly engaged in the conduct for which he was charged prior to filing a grievance, but that he was only subject to disciplinary action after filing the grievance. *Id.* at 442. This necessarily implies that a misconduct ticket need not be false to constitute adverse action. But even setting this conflict aside, the undersigned finds that the circumstances here are distinct from those warranting summary judgment in *Bey*.

Long provided this Court with his misconduct hearing reports and appeals. On October 17, 2020, Long filed a misconduct appeal asserting that the September 29, 2020 misconduct ticket was false, retaliatory, and issued in accordance with an expired rule. (ECF No. 1-2, PageID.31.) In the hearing report for the October 15, 2020 excessive noise misconduct, the hearing officer noted Long's statement that he was not yelling, contrary to the allegations in the ticket. (ECF No. 1-3, PageID.40.) In an appeal of the same, Long reiterated that the misconduct was false and

retaliatory, and noted that the hearing officer refused to document Long's allegations of retaliation. (*Id.*, PageID.39.) On October 23, 2020, Long filed a misconduct appeal asserting that the October 23, 2020 misconduct ticket was false and retaliatory. (ECF No. 1-4, PageID.46.) Long asserted that, per MDOC policy, his sanctions began on October 24, 2020, and he therefore was not out-of-place as charged. (*Id.*) Long also stated that the hearing officer refused to record his complaints of retaliation in his misconduct hearing report. (*Id.*) On April 30, 2021, Long filed a misconduct appeal asserting that the April 3, 2021 and April 10, 2021 misconduct tickets were false and retaliatory. (ECF No. 1-5, PageID.52.) Finally, unlike the plaintiff in *Bey*, Long repeatedly alleged that the misconduct tickets were false, or improper,[3] in his verified complaint. (ECF No. 1, PageID.6-11.) Taken together, these statements create a genuine issue of material fact as to the legitimacy of the misconduct tickets.

## C. Causal Nexus

Moving forward, Defendants aver that Long's retaliation claim must be dismissed because Long cannot establish that Munro harbored retaliatory motive and, even if Long could prove that point, CO Munro has established that he would have issued the misconduct tickets regardless of Long's protected conduct. (ECF No. 42, PageID.317-336.)

---

[3]    In asserting that the relevant misconduct tickets were not false and therefore not adverse, Defendants home in on the truth behind CO Munro's allegations in the tickets. (ECF No. 42, PageID.318-323.) Defendants ignore the reality that a misconduct ticket, though containing true allegations, may nevertheless be false in the sense that the allegations do not warrant the charge. Defendants ignore this reality despite the fact that Long was found not guilty of at least one of the misconduct tickets issued by CO Munro. (*Id.*, PageID.320.)

To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).  At the summary judgment stage, the Sixth Circuit employs a burden-shifting approach with regards to the causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant.  If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Blatter*, 175 F.3d at 399; *see also Thomas,* 481 F.3d at 441.

The undersigned first addresses Munro's assertion that Long failed to establish any retaliatory motive behind the issuance of the issuance tickets.  (ECF No. 42, PageID.324-327.)   In his complaint, Long alleges that Munro made the following statements: (1) "your grievance will get denied, my ticket will stand" (July 18, 2020), (2) "keep filing your grievances, as long as you're in our unit, you'll be on TOP-LOCK" (October 23, 2020), and (3) "yes I can hear and conduct hearings on you, you like to write grievances, we write tickets on you" (April 3, 2021).  (ECF No. 1, PageID.6, 9-10.)  The undersigned finds that these statements are sufficient to create a genuine issue of fact as to whether Munro harbored a retaliatory motive throughout the relevant timeframe.

Next, the undersigned addresses Defendants' assertion that CO Munro would have issued the misconduct tickets regardless of Long's protected conduct.  Here, Defendants claim that CO Munro issued the misconduct tickets because Long was

violating prison rules, not because Long engaged in protected conduct.  (ECF No. 42, PageID.327.)  Defendants again emphasize the truth behind Munro's statements in the tickets (*id.*, PageID.327-335), and point to Munro's affidavit, wherein he states that he would have written each misconduct ticket regardless of any oral or written grievance against him (ECF No. 42-6, PageID.378-382).  But the undersigned already determined that there are genuine issues as to the legitimacy of the misconduct tickets.  Furthermore, Munro's affidavit denying retaliatory motive is insufficient to carry his burden of establishing that he would have taken the same actions regardless of Long's protected conduct — Munro's affidavit does "little more than deny the allegations" put forth by Long.  *Maben*, 887 F.3d at 268 (citing *Blatter*, 175 F.3d at 399).

In sum, the undersigned finds that there are genuine issues of material fact bearing on the merits of Long's retaliation claim against CO Munro.  Accordingly, the undersigned respectfully recommends that the Court deny the parties' motions for summary judgment as to this claim.

## V.    Equal Protection

The undersigned now turns to Long's claim that CO LaPonsie racially discriminated against Long in violation of his equal protection rights.  This claim is straight-forward: Long, who is black, asked LaPonsie to use the restroom on October 17, 2020, and LaPonsie said no.  (ECF No. 1, PageID.9.)  Immediately thereafter, a white prisoner asked LaPonsie to use the restroom, and LaPonsie said yes.  (*Id.*)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  To establish a cognizable equal protection claim, a plaintiff must show "that [he was] 'intentionally singled out by the government for discriminatory adverse treatment.'" *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 905 (6th Cir. 2019) (quoting *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty.*, 430 F.3d 783, 788 (6th Cir. 2005)).

A Section 1983 plaintiff making a claim under the Equal Protection Clause must allege that a state actor "intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).  As explained by the Supreme Court:

> "Discriminatory purpose," . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.

*Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citation omitted).

Defendants deny that LaPonsie refused to allow Long to use the restroom on October 17, 2020.  (ECF No. 42, PageID.336 (citing ECF No. 42-2, PageID.344 (LaPonsie's Affidavit)).)  But even assuming that LaPonsie denied Long's request, Defendants simply contend that this Court should dismiss Long's claim because Long

"can produce no evidence showing that LaPonsie harbored a discriminatory intent or purpose." (*Id.*, PageID.337.)

While plaintiffs asserting equal protection claims must demonstrate discriminatory intent, that intent "need not be proved by direct evidence." *Rogers v. Lodge*, 458 U.S. 613, 618 (1982). So, while it may be difficult to prove discriminatory intent without "the proverbial 'smoking gun of an overtly discriminatory statement by a decisionmaker,'" it is not impossible. *Ryan v. City of Detroit*, 174 F. Supp. 3d 964 (E.D. Mich. 2016) (quoting *Soto v. Flores*, 103 F.3d 1056, 1067 (1st Cir.1997), *cert. denied*, 522 U.S. 819 (1997)), *aff'd sub nom. Ryan v. City of Detroit*, 698 F. App'x 272 (6th Cir. 2017). "[D]etermining the existence of a discriminatory purpose 'demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Rogers*, 458 U.S. at 618 (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)).

In his verified complaint, Long says that only moments separated his request to use the restroom, and the white prisoner's request to use the restroom. Nevertheless, LaPonsie denied Long's request but granted the white prisoner's request. While Defendants claim that these facts, if true, establish at most differential treatment, Defendants point to no alternative motivation behind the differential treatment; the circumstantial evidence suggests a discriminatory purpose. *Cf. Hunter v. Cebula*, No. 2:11-cv-296, 2011 WL 5192106, at *3 (W.D. Mich. Oct. 31, 2011) (finding insufficient evidence of discriminatory intent where the defendant denied the plaintiff's request to close the windows but granted a white

17

prisoner's request to close the windows later in the day, because the defendant could have changed her mind for a variety of reasons). As this is Defendants' only argument,[4] the undersigned finds that there is a genuine issue of fact pertaining to J. LaPonsie's intent which precludes summary judgment.

## VI. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity. (ECF No. 42, PageID.337-338.) "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for

---

[4]     For example, Defendants do not posit that a one-time denial of Long's request to use the restroom is, without more, insufficient to rise to the level of a constitutional violation. *See, e.g.*, *Gunn v. Ky. D.O.C.*, No. 5:07cv-P103-R, 2010 WL 2555756, at *4 (W.D. Ky. June 18, 2010) ("[Plaintiff] does allege that he was required by Defendant Burnham to sit in an assigned seat in chapel whereas other security check inmates were not. However, he does not allege any harm from having to sit in an assigned seat. Such an isolated, *de minimus* inconvenience does not support a constitutional claim."); *Jackson v. Leutzow*, No. 205-cv-188, 2006 WL 3751168, at *5 (W.D. Mich. Dec. 18, 2006) ("Plaintiff suggests that he is handicapped and defendant was making fun of him because of his handicap. . . Plaintiff has not alleged that any harm was caused by the alleged insensitive remark. In the opinion of the undersigned, one isolated insensitive remark is insufficient to support a violation of the equal protection clause.") Perhaps this is because courts are wary of categorizing any act of racial discrimination as *de minimis*. *See, e.g., Brazell-Hill v. Parsons*, No. 2:17-cv-912, 2020 WL 4748545, at *10 (S.D. Ohio Aug. 17, 2020) (first citing *Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 814 (7th Cir. 2001); and then citing *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 712 (9th Cir. 1997)) ("[D]ifferential treatment on the basis of race by school officials is a constitutional violation, and there is no exception for '*de minumus* violations.'"). No matter, the undersigned will not recommend dismissal of Long's equal protection claim at the summary judgment stage based on grounds Defendants did not offer and Long did not have the opportunity to address. *See Beaty v. United States*, 937 F.2d 288, 291 (6th Cir. 1991) ("We note in passing that the district court entered summary judgment *sua sponte* on grounds not urged on him by either party, without informing the adversely affected parties of his intent to do so, a practice that we discourage." (citing *Routman v. Automatic Data Processing*, 873 F.2d 970, 971 (6th Cir.1989))).

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Analyzing claims of qualified immunity involves a two-pronged test. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).  Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232).  A court may address these prongs in either order. *Id.* (citing *Pearson*, 555 U.S. at 236).  A government official is entitled to qualified immunity if the court finds that there is no constitutional violation, or that the right at issue was not clearly established. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first prong of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The court considers the state of the law at the second prong.   As the Supreme Court has

observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, supra, at 741–742, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S. at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. Id., at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. 7, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff, supra, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." Anderson, supra, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" Mullenix, supra, at 309 (quoting Anderson, supra, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018).

Retaliating against prisoners for filing non-frivolous grievances violates their clearly established First Amendment rights.  *Hill*, 630 F.3d at 472 (emphasis added) (citing *Herron*, 203 F.3d at 415).  And invidiously discriminating against a prisoner based on their race violates their clearly established Fourteenth Amendment rights. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Because the undersigned finds there are genuine issues of material fact bearing on whether CO Munro retaliated against Long for filing grievances and whether CO LaPonsie denied Long's request to use the restroom because of his race, the undersigned respectfully recommends that qualified immunity is not appropriate at this stage of the case.

## VII.  Sovereign Immunity

Defendants finally assert that they are entitled to sovereign immunity as to Long's claims against them in their official capacity.  (ECF No. 42, PageID.338.)  As set forth above, Long sues Defendants in their official and individual capacities.  Long requests monetary and prospective relief.

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State.  *Brandon v. Holt*, 469 U.S. 464, 471 (1985).  The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).  Congress has not expressly

abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  As such, Long's claims against Defendants in their official capacity for monetary damages are properly dismissed in accordance with Eleventh Amendment.

But Long also seeks prospective injunctive relief; state actors are not entitled to sovereign immunity on claims for prospective relief.  *Doe v. Wigginton*, 21 F.3d 733 (6th Cir. 1994) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)) (explaining that official-capacity claims for prospective relief are "deemed to be against only the nominal defendant officers" and are therefore not barred by the Eleventh Amendment); *see also Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014) (explaining that *Ex parte Young* and its progeny "allow federal courts to enjoin state officers in their official capacity from prospectively violating a federal statute or the Constitution").  Because Defendants do not address Long's official capacity claims for prospective relief, the undersigned recommends that the Court deny summary judgment as to these claims.

## VIII.  Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment (ECF No. 41) as to Long's official-capacity claims for monetary relief because Defendants are entitled to sovereign immunity as to those claims.  But the undersigned recommends that the Court deny both Long's motion for summary judgment (ECF No. 27) and Defendants' motion for summary judgment

(ECF No. 41) as to Long's remaining claims because there are genuine issues of material fact bearing on Long's retaliation and equal protection claims.

If the Court accepts this recommendation, Long's official-capacity claims for monetary relief will be dismissed, but all other claims will remain.

Dated:  December 28, 2022                              /s/ *Maarten Vermaat*
                                                                      MAARTEN VERMAAT
                                                                      U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C) Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).